UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────

| | |
|---|---|
| PAMELA D. PURSEY<br><br>      Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL,[1] Commissioner of<br>Social Security,<br><br>      Defendant. | **DECISION<br>and<br>ORDER**<br><br>**15-CV-00340-LGF**<br>**(consent)** |

───────────────────────────────────

APPEARANCES:    LAW OFFICES OF KENNETH HILLER
             Attorneys for Plaintiff
             TIMOTHY HILLER, of Counsel
             6000 N. Bailey Avenue
             Suite 1A
             Amherst, New York 14226

             JAMES P. KENNEDY
             ACTING UNITED STATES ATTORNEY
             Attorney for Defendant
             DAVID L. BROWN
             Assistant United States Attorney, of Counsel
             Federal Centre
             138 Delaware Avenue
             Buffalo, New York 14202, and
             STEPHEN P. CONTE
             Regional Chief Counsel
             United States Social Security Administration
             Office of the General Counsel, of Counsel
             26 Federal Plaza
             Room 3904
             New York, New York 10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn Colvin as the defendant in this suit. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On May 17, 2016, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned. (Dkt. No. 19). The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, filed by Plaintiff on November 6, 2015 (Dkt. 13), and by Defendant on March 7, 2016 (Dkt 17). For the reasons discussed below, Plaintiff's motion is denied and the Commissioner's motion is granted.

**BACKGROUND and FACTS**

Plaintiff Pamela Pursey ("Plaintiff ") brings this action pursuant to the Social Security Act ("the Act"), seeking review of the Acting Commissioner of Social Security ("the Commissioner" or "defendant") decision denying her application for disability benefits for Supplemental Security Income ("SSI") benefits under Title II of the Act. Plaintiff, worked most recently as a dietary aide in an assisted living home (R. 54), until Plaintiff quit work after being hospitalized for an emotional breakdown on August 10, 2012. (R. 57).

Plaintiff filed an application for SSI benefits on April 24, 2012 (R. 202), that was initially denied by Defendant on September 12, 2012, and, pursuant to Plaintiff's request filed on November 26, 2012 (R. 141), a hearing was held before Administrative Law Judge Bruce R. Mazzarella ("Mazzarella" or "the ALJ"), on April 23, 2013, in Buffalo, New York. (R. 47-103). Vocational expert Jay Steinbrenner ("Steinbrenner" or "the VE"), also appeared and testified at the hearing. Plaintiff, represented by Stephen Brooks, Esq. ("Brooks"), appeared and testified at the hearing. The ALJ's decision denying Plaintiff's claim was rendered on September 19, 2014. (R. 21-35). Plaintiff

requested review by the Appeals Council, and the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on February 18, 2015. (R. 1-7). This action followed on April 20, 2015, with Plaintiff alleging that the ALJ erred by failing to find her disabled. (Doc. No. 1).

On November 6, 2015, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Doc. No. 13) ("Plaintiff's Memorandum"). Defendant filed, on March 7, 2016, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 17) ("Defendant's Memorandum"). Plaintiff filed a reply to Defendant's motion on the pleadings on March 28, 2016, ("Plaintiff's Reply Memorandum") (Doc. No. 19). Oral argument was deemed unnecessary.

## DISCUSSION

A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or the decision is based on legal error. *See* 42 U.S.C. 405(g); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence" means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). At step one of the sequential evaluation, *see* 20 C.F.R. § § 404.1520, 416.920, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 30, 2011, Plaintiff's alleged onset date of disability. (R. 21). At step two, the ALJ determined that Plaintiff suffered from the severe impairments of Guillain-Barre with peripheral neuropathy, sleep apnea, obesity, post-traumatic stress disorder ("PTSD"), bipolar disorder, generalized anxiety disorder, right arm lymphedema

and asthma. (R. 23). At step three, the ALJ found that Plaintiff's impairments, did not meet or medically equal the criteria for disability under Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments"), specifically 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 1.02 ("§ 1.02") (Major dysfunction of a joint), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 3.03 ("§ 3.03") (Asthma), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 3.10 ("§ 3.10") (Sleep-related breathing disorders), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 11.14 ("§ 11.14") (Peripheral neuropathy), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.04 ("§ 12.04") (Affective disorders), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.06 ("§ 12.06") (Anxiety related disorders), and 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 14.00 ("§ 14.00") (Immune system disorders). (R. 25). Plaintiff does not contest the ALJ's findings at steps one through three of the review process.

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv), and prove that substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker*, 626 F.2d 225 at 231. To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment

4

opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id*. An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294. In this case, the ALJ determined that Plaintiff had the residual functional capacity to perform light work. (R. 35).

At step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and determined that Plaintiff had the residual functional capacity to perform light work. (R. 34). At step five, the VE determined that, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff would be able to perform her past relevant work as a housekeeper, small products assembler and telemarketer under 20 C.F.R. § 404.1565, 404.965. (R. 35). The ALJ determined that Plaintiff was therefore not disabled. *Id.*

ALJs are "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole," and residual functional capacity assessments may not perfectly correspond with any individual medical opinion. *See Matta v. Astrue,* 508 Fed. App'x 53, 56 (2d Cir. 2013). "When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence." *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).

In this case, the ALJ assigned significant weight to the opinion of Susan Santarpia, Ph.D., ("Dr. Santarpia"), that Plaintiff had no significant health problems, and rejected the opinion of Horacio A. Capote, M.D. ("Dr. Capote"), that Plaintiff was incapacitated as a result of Plaintiff's psychological and psychosocial issues. (R. 850). Plaintiff alleges that the ALJ improperly afforded more weight to Dr. Capote's opinion that Plaintiff's mental impairments improved over time, and failed to discuss Dr. Capote's opinion using the six factors set forth under 20 C.F.R. § 404.1527(d) ("§ 404.1527(d)"). Plaintiff's Memorandum at 20-24. Defendant relies on *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) and *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998), to support Defendant's contention that the ALJ was not required to individually discuss each of the six factors required under the treating physician rule. Defendant's Memorandum at 25. In this case, Dr. Capote completed examinations on Plaintiff on June 4, 2012 (R. 384-87), September 5, 2012 (R. 889-91), and June 11, 2104. (R. 852-55). On June 4, 2012, Dr. Capote noted that Plaintiff reported feeling "a little depressed" (R. 386), and problems with appetite and sleep. (R. 384). Dr. Capote diagnosed Plaintiff with Axis I[2] bipolar disorder not otherwise specified ("NOS"), generalized anxiety disorder, post-traumatic stress disorder ("PTSD"), Axis II deferred, Axis III sleep apnea, history of brain cancer, history of breast cancer, Guillain-Barre disease, reflex sympathetic dystrophy, obesity and lymphedema, Axis IV moderate to

---

[2] The DSM-IV multiaxial scale is used to assess an individual's mental and physical condition on five axes, each of which refers to a different class of information: Axis I, clinical disorders; Axis II, personality disorders; Axis III, general medical conditions; Axis IV, psychosocial and environmental stressors, and Axis V, global assessment of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders-IV-TR* ("DSM-IV"), at 27 (4th ed. 2000).

6

severe stressors, and assessed Plaintiff with an Axis V Global Assessment of Functioning ("GAF")[3] score of 50. (R. 386). On September 5, 2012, Dr. Capote noted that Plaintiff reported being hospitalized from August 10, 2012 to August 18, 2012, for stress related to an uncle with cancer and the death of a patient that Plaintiff was taking care of. (R. 890). Dr. Capote noted that Plaintiff's course of treatment would remain the same as Plaintiff was stable. (R. 891). On June 11, 2014, Dr. Capote completed a follow-up examination on Plaintiff who reported stress and crisis in her life. (R. 852). Dr. Capote assessed Plaintiff with goal directed and somewhat concrete thoughts, no evidence of hallucination or delusion, psychomotor agitation or retardation, constricted affect, adequate concentration, grossly intact memory and fund of knowledge, decent insight and judgment and no dysphoria, dysarthria, or dysphasia, and noted that Plaintiff's medication regimen would remain the same as Plaintiff was stable. (R. 854). At the request of Plaintiff's counsel, on June 11, 2014, Dr. Capote completed a medical source statement the same day, and opined that Plaintiff had poor or no ability to understanding and remembering short and simple instructions, or maintaining attention for extended periods of two hour segments, working in coordination with others without being distracted, making simple work-related decisions, completing a normal workday and workweek without interruptions from psychologically based symptoms, accepting

---

[3] The Global Assessment of Functioning (GAF) scale is used to report an individual's overall level of functioning. http:// *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th Edition, Text Revision) ("DSM-IV-TR"). A GAF of 41-50 indicates: Serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or social functioning (*e.g.*, no friends, unable to keep a job) . . . A GAF of 51-60 [indicates] moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). DSM-IV-TR at 32.

instructions and responding appropriately to supervisors, getting along with co-workers, responding appropriately to changes in a work setting, and that Plaintiff was incapable of work through no fault of her own. (R. 848-50). Such assessment is without support of substantial evidence and is inconsistent with treatment progress notes of Dr. Capote's Physician Assistant Gregory Groth ("P.A. Groth"). In particular, on February 21, 2013, P.A. Groth noted that Plaintiff reported attending a women's bible study group, being in a good mood, and difficulty sleeping as a result of her continuous positive airway pressure ("CPAP") machine. (R. 836). P.A. Groth assessed Plaintiff with normal concentration and attention. (R. 840).

On May 2, 2013, P.A. Groth noted that Plaintiff reported being in a good mood for months, attending physical therapy, benefiting from pastoral counseling, getting out with friends and family members, and rarely staying home. (R. 875). P.A. Groth assessed Plaintiff with sound concentration, grossly intact fund of knowledge and memory, very good judgment and keen insight, goal oriented thoughts, and no hallucinations or delusions. (R. 876). On July 8, 2013, Plaintiff reported feeling "very good," and attending parties with family and friends, engaging in conversation and physical activities, feeling energetic and positive about life, with no significant anxiety or mood swings. (R. 872). P.A. Groth assessed Plaintiff with sound concentration, grossly intact fund of knowledge and memory, very good judgment and keen insight, goal oriented thoughts, and no hallucinations or delusions. (R. 873).

During a follow-up examination on September 17, 2013, P.A. Groth noted that Plaintiff reported enjoying a good summer, reducing her medication by 50 percent but feeling panicky after missing some doses, seeing a pastoral counselor, and that she

wanted to return to part-time work. (R. 825). P.A. Groth assessed Plaintiff with sound concentration, grossly intact fund of knowledge and memory, very good judgment and keen insight, goal oriented thoughts, and no hallucinations or delusions. (R. 826). On February 25, 2014, Plaintiff reported a panic attack as a result of her part-time work, feeling intimidated by working for a third-party employer and that she was fired because business was slow. (R. 843). P.A. Groth assessed Plaintiff with clear and coherent speech, oriented thoughts and goals, no evidence of hallucinations or delusions, good concentration, intact memory and fund of knowledge, insight and judgment and normal affect. (R. 845). On June 3, 2014, Plaintiff reported feeling "pretty good," free of melancholy or mood swings, but experienced two panic attacks during a training session to obtain public assistance. (R. 856). P.A. Groth evaluated Plaintiff as alert and oriented in all spheres, with clear and coherent speech, less future-oriented thoughts, adequate concentration, grossly intact fund of knowledge and memory, fine insight and decent judgment. (R. 858). Dr. Capote's finding on June 11, 2014, that Plaintiff's mental impairments deem Plaintiff unable to work are inconsistent with the treatment records of his own office staff and unsupported by substantial evidence. No error results from the ALJ's determination to afford less weight to such findings. Plaintiff's contention that the ALJ failed to adhere to the requirements under 20 C.F.R. § 404.1527(d)(2) is also without merit. The ALJ relied upon substantial evidence to contradict Dr. Capote's opinion (R. 33), and support Plaintiff's improved mental status. *See Halloran v. Barnhart*,362 F.3d 28, 32 (2d Cir. 2004) ( no violation of the treating physician rule where the ALJ discussed the consistency of the treating physician opinion with other evidence and provided "good reasons" for rejecting the opinion).

The ALJ also afforded less than controlling weight to the opinion of Michelle Potempa, M.D. ("Dr. Potempa"), finding such opinion inconsistent with the opinion of consultative physician Donna Miller, D.O. ("Dr. Miller) (Plaintiff had a mild to moderate limitation for heavy lifting, bending, reaching, pushing and pulling). (R. 34). Plaintiff contends that the ALJ improperly rejected the opinion of Dr. Potempa in favor Dr. Miller's less-particularized opinion, and that the ALJ should be required to re-contact Dr. Miller for a more detailed statement of Dr. Miller's assessment of Plaintiff's ability to stand. Defendant maintains that Dr. Miller's finding that Plaintiff exhibited normal gait, station and strength and Plaintiff's reported activities of daily living support the ALJ's determination that Plaintiff is capable of light work, and that the ALJ was therefore not required to re-contact Dr. Miller for an individualized assessment of Plaintiff's ability to stand or walk. Defendant's Memorandum at 27. To be considered capable of performing a full range of light work, the Plaintiff must have the ability to do "substantially all" of the listed activities. "Light work" involves

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls.

20 C.F.R. § 404.1567(b).

A physician's opinion that a clamant has mild to moderate limitations in walking, pushing, and pulling support a finding that the claimant is capable of performing light work. *See Gurney v. Colvin*, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016). In this case, the ALJ's finding that Plaintiff is capable of performing light work accounts for mild to moderate limitations to Plaintiff's ability to walk and stand, and is supported by

10

Plaintiff's testimony that she assists the elderly, attends church and bible study, does dishes and laundry, grocery shops, goes out with family and friends, travels (R. 885), sings in chorale (R. 861), takes walks (R. 885), volunteers as a docent at the local historical museum, and paints. (R. 857). Plaintiff's motion on this issue is therefore DENIED.

In addition to determining whether a disability claimant has the residual functional capacity to return to work, the Commissioner must establish that the claimant's skills are transferrable to the new employment if the claimant was employed in a "semi-skilled" or "skilled" job.[4] *Id*. at 294. This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy. *Id.* at 296. Where applicable, the Medical Vocational Guidelines of Appendix 2 of Subpart P of the Regulations ("the Grids") may be used to meet the Secretary's burden of proof concerning the availability of alternative employment and supersede the requirement of VE testimony regarding specific jobs a claimant may be able to perform in the regional or national economy. *Heckler v. Campbell*, 461 U.S. 458, 462 (1983).

In this case, the ALJ determined that Plaintiff was capable of performing her past relevant work as a housekeeper, small parts assembler and telemarketer, jobs that were unskilled with a light level of exertion. (R. 34). During Plaintiff's administrative hearing, the ALJ posed a hypothetical to the VE whether an individual like Plaintiff, capable of light work, with the limitation to sitting for 30 minutes at a time, standing for

---

[4] The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled". *Decker, supra*, at 295.

11

20 minutes at a time, alternating between sitting and standing for one hour before needing to lie down or recline, walking less than a block at a time and capable of lifting up to five pounds, would be able to perform Plaintiff's past relevant work as an office worker, cashier, kitchen supervisor, group home aide, dietary aide, housekeeper, retail sales clerk, and telemarketer (R. 94), to which the VE opined that Plaintiff would not be able to perform her past relevant work as a result of the need for Plaintiff to lie down and recline. (R. 96). The ALJ altered the hypothetical to include an individual capable of sitting for an eight-hour day with normal breaks, lifting and carrying 20 pounds occasionally, with no work in unventilated areas containing high concentration of fumes, dusts, vapors, and gasses, to which the VE opined that Plaintiff would be able to perform all of Plaintiff's past relevant work at the light exertional level. (R. 97). Plaintiff alleges that the ALJ failed to consider correspondence from Mr. Boron, Plaintiff's employer, who opined that Plaintiff was not able to complete her job duties as an office clerk in the ALJ's finding that Plaintiff is capable of Plaintiff's past relevant work. Plaintiff's Memorandum at 26. Defendant maintains that the ALJ was not required to include evidence from Plaintiff's past employer in the ALJ's findings on Plaintiff's ability to perform past relevant work, and that the ALJ's determination not to consider Mr. Boron's correspondence is harmless as Plaintiff's work as an office clerk is irrelevant to Plaintiff's ability to perform the jobs testified to by the VE. Defendant's Memorandum at 28. Here, because, as discussed above, the ALJ's residual functional capacity of Plaintiff is supported by substantial evidence, it follows that the ALJ's hypotheticals posed to the VE based on such residual functional capacity assessment also are supported by substantial evidence and without error. *See Kennedy v.* Astrue, 343 Fed.

App'x. 719, 722 (2d Cir. 2009) (no error where hypothetical questions to VE are based on residual functional capacity assessment supported by substantial evidence). Plaintiff's motion is DENIED.

## **CONCLUSION**

Based on the foregoing, Plaintiff's motion (Doc. No. 13) is DENIED; Defendant's motion (Doc. No. 17) is GRANTED consistent with this Decision and Order. The Clerk of the Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    November 2, 2017
                Buffalo, New York